Good morning everyone. Our first case for argument this morning is Best v. Berryhill. Mr. Forbes. Thank you, Your Honor. May it please the Court, my name is Randall Forbes. I represent the disability claimant and I represented this particular disability claimant pretty much throughout the process. I guess I will start off with what I think is a Bjornsson backwards analysis argument. I understand what the district court is saying in the sense that the judge did not spend a lot of time on all of the medical issues, but what Bjornsson is mostly about is sequence. Mr. Forbes, there was a lot else going on in Bjornsson and I'm troubled by your argument. You seem to think that if I start one of my opinions and announce in the first paragraph that we are affirming, that everything else is obviously then that comes after that as reasoning to a result already reached and it's backwards reasoning. Is that right? No. What I'm suggesting is the interruption in the middle where the judge basically affirms what came before as if it's done and then starts off on the subsequent analysis. If we sent this back and the ALJ rearranged the paragraphs, would that solve the problem from your point of view? It would not because in order to solve the problem, it's got to be more than just reordering. It's got to be an honest judicial consideration of all of the evidence, which then leads to the finding. I understand where you're coming from because this line of case law is not wedded hard and fast to the sequence. You've got to look past the sequence to the substance, but here, as I stated, it reads as if the finding is done and concluded and then, oh, by the way, here's these other impairments. Mr. Forbes, let me ask you, in Mr. Best's case, I gather we're going to be hearing a lot from you this morning. It's a busy day. In Mr. Best's case, were there any doctors who imposed functional restrictions upon Mr. Best that amount to complete disability? The ALJ, I believe, is incorrect when she said there were none. That's why I'm asking. On administrative record page 337, which is actually two days after the alleged onset date, I believe there is a statement of function which includes a 10-pound weight limit, a sit-stand as tolerated, and then several other postural limitations. Do those add up to requiring a finding of disability? They could, and the reason is that's in the sedentary category, and as of age 50, this claimant would have met the grids if... If he's sedentary only? Yes, and then, so it depends on how the sit-stand option ultimately is worked, but that's in there. Thank you. Yes, and I know I bring this up quite a It's important when the disability case involves someone who has given the effort to work like this claimant, because we constantly have to fight cases where the effort to work is equivocal, but in this case, it's not equivocal. There's great effort to work. Not only that, there is effort to And in fact, in this particular individual's case, there was effort to work after major surgeries where he bettered his skills so he could work. So if the case boils down to credibility, and we are under the old regulations on this case, so the old physician opinion rulings and the old credibility rulings and regulations still apply, but if it boils down to whether you believe this particular claimant needs to take five days a month where... Testifies there are five days a month where he can't do anything because of pain issues and the combination of all of his impairments, then it seems to me you've got to have a really good reason to reject it. Here, the only reason that I'm discerning is that the function reports at the beginning of this case suggested that he could do some activity, although I would contest that they don't really express that completely. But those happened in 2013, the hearing happened in 2015, so you can't really take the testimony that happens two years later and contrast it with that and say, oh, it's inconsistent. Well, the fact is that in these kinds of cases, especially back pain and neck pain, the pain waxes and wanes. And someone like my client, who really doesn't want to be disabled, would rather work on the days he feels good, he tries. And then on the days that he feels really, really bad, that's true, he feels really, really bad. So yes. That's kind of a slim read for the argument here. Just to claim that he has five bad days a month is a little vague without something to support that. And the ALJ discounted that as not credible based on the rest of the record. So to send the case back to... It's just a question of how much weight that deserves, and we don't send cases back because of one item of testimony that the claimant says was given insufficient weight. And I'm reading the record differently. Here is a record with a mountain of evidence supporting his testimony of pain and supporting his testimony of really bad pain on I mean, this is a mountain of evidence. This kind of evidence here is about as good as it gets in these kinds of cases based on my experience. So it's not just his testimony, it's his testimony superimposed upon all the surgeries, the fact that he needed a pain pump, the fact that he was on high-powered medications to deal with the pain on top of the fact of his work history and on top of the fact that he is a honorably discharged veteran. All of that comes into play when he testifies that he has five bad days a month. I'd like to reserve the rest of my time for rebuttal. Thank you, Your Honor. That's fine. Mr. Hensley. Good morning, Your Honors. May it please the Court, I'm Jay Hensley. I'm representing the Counsel points to a mountain of evidence supporting Mr. Best's testimony. However, in three briefs, one to the District Court and two to this Court, with all respect, he points to no evidence. He discusses none of the specific evidence that support this testimony or the allegations that he makes as to disabling impairments. Mr. Best's attempt to match this up with Bjornsson, with all respect, falls flat. As this Court is aware, Bjornsson involved an assessment of RFC before even looking at a subjective complaint or credibility determination. That's not what happened here. Mr. Best is complaining because although the ALJ took his impairments one by one and provided analysis of these impairments, she elected to include her analysis of his diabetes and mental health complaints at a juncture in the decision that occurred after she enunciated the RFC. However, Mr. Best does not dispute the ALJ's thorough discussion of the evidence pertaining to his diabetes and the mental health issues and the treatment that he received for those issues. Now, a question was raised about whether there was an examiner's opinion as to RFC in the record. I'll confess I'm not aware of transcript page 335. To my knowledge, the only somewhat statement of limitations in the record, other than the state agency opinions, was Dr. Kamineni. This was at page 381. This was a consultative examiner. The ALJ addressed this opinion and properly found that at the conclusion of the report, Dr. Kamineni merely said, Mr. Best states that he can stand for so many hours, states that he can sit for so many hours. These were clearly just a reiteration of what Mr. Best said he could do. But if you look at the body of the report itself, the findings were that he was able to walk in tandem, he was able to walk on his heels and toes, his gait was stable, there was no diminishment in leg strength. The ALJ properly noted Mr. Best's history of back surgeries, but she noted properly that the last back surgery occurred 16 years before his alleged onset date. And Mr. Best went back to work on a steady basis from 1997 through 2012. And importantly, the ALJ noted there was no diagnostic evidence of a worsening in his condition. And this is undisputed. More evidence supports the ALJ's RFC assessment. In August 2009, MRI of his lumbar spine showed no evidence of disc protrusion or nerve root compression. There was no evidence of stenosis. The ALJ further went through, and this is an eight-page discussion, thorough discussion of the RFC and the evidence that supported the RFC. In February 2013, Dr. Maddox found normal gait, coordination, strength, and reflexes with no sensory deficits. In June, July, August of 2013, Dr. Maddox again found normal gait, coordination, strength, and reflexes, normal range of motion, and no sensory deficits. August 2013, Dr. Zolman reported that the reprogramming of Mr. Best's spinal cord stimulator helped his low back pain. In December of 2013, it was noted that Mr. Best walks with a non-ontalgic gait. He's able to transition independently from sitting to standing and on and off the examination table. February 2014, he reported that his spinal cord stimulator helped relieve his neuropathic leg pain. And we're not disputing the presence of pain. Keep in mind, the ALJ acknowledged the pain and properly dealt with it, but the ALJ is driven by the evidence. She looked at the evidence, thoroughly looked at the evidence, and applied the evidence to the regulations and did what she's supposed to do. If I may, Your Honors, I'd like to address the issue raised in Mr. Best's reply brief pertaining to the Stark case and the comparisons to Stark to this case. Mr. Best points out some similarities between Stark and the facts in this case. I'd like to point out some significant distinctions. First of all, in Stark, the ALJ ignored a treating doctor's opinion that Stark is always going to have neuropathic leg pain, which could account for her complaints of pain, or her degenerative disc disease, which could account for her pain progressively worsening. Here, again, as I pointed out, none of Mr. Best's that contradicts the ALJ's findings. Secondly, in Stark, as we've mentioned, the ALJ got things backward and actually based the credibility finding on the previous finding about RFC. Here, the ALJ did not do this. Third and finally, in Stark, the ALJ ignored evidence that Stark wasn't even able to take her narcotic pain medications because of a hepatitis C diagnosis. Of course, that's not present here. As a general rule, Mr. Hinesley, would you agree that work history is often a very important indicator of credibility of claims of disabling pain? Yes, it certainly can be, and it is a factor that should be looked at. And the ALJ did address the fact that Mr. Best works steadily. I don't know that she used that as a driving factor in her credibility analysis one way or the other. Certainly didn't use it against him, but Mr. Best wants special mention of that work, strong work record, but he offers no argument that the ALJ misread the evidence or that she erroneously applied the factors that she's required to apply in evaluating his subjective complaints. So I think, honestly, it comes down to an evidentiary problem in this case. And again, counsel points to the mountain of evidence, and with respect, I say, where's the mountain? What evidence supports his claims? Neither agency policy or case law supports Mr. Best's argument. I see I do have a lot of time left. Unless there are any further questions, I simply thank the court very much for the opportunity, and we ask that you uphold the ALJ's decision. Thank you. Thank you. Mr. Forbes, rebuttal. I believe the ALJ did ignore the RFC or the limitation statement of his treating doctor at record 337. Maybe it's because it was issued one month before he stopped working. I don't know, but it's there. I have looked at the opinion in depth, and I hope I'm not incorrect, or I hope I didn't miss anything, but I looked at the opinion in depth again. I don't find a mention of absences or how they relate to all of the appointments, so that's ignored. Certainly, this work history is entitled to more than just a passing mention, if that's the case. This is the type of work history that needs to be analyzed and thoroughly discredited, so that's a problem. Stark, obviously, is not a perfect match. Most Social Security cases are not perfect matches because they are fact-intensive based on individual medical histories, but it is a good illustrative match to see the differences. Thank you, Your Honors. Please consider this seriously and issue a remand. Thank you. The case is taken under advisement.